UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASHLEY HAMMETT,<br>Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ERICSSON, INC.,<br><br>Defendant. | Case No. 24-10882<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)<br><br>CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |

## ORIGINAL COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiff—Ashley Hammett—brings this action individually and on behalf of all current and former hourly Tower Technicians (collectively, "Plaintiff and the Putative Collective/Class Members" or "Plaintiffs"), who worked for Defendant—Ericsson, Inc. ("Ericsson")—anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, and—for those who worked in Massachusetts—unpaid compensation, liquidated damages, and attorneys' fees and costs pursuant to the Massachusetts Minimum Fair Wages Act, MASS. GEN. LAWS, Ch. 151, § 1, *et seq.* ("MMFW"); the Massachusetts Wage Act, MASS. GEN. LAWS, Ch. 149, §§ 148 and 150 ("MWA") (the MMFW and MWA are collectively referred to as the "Massachusetts Acts").

# I.
# OVERVIEW

1.      This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA and a class action pursuant to the state laws of Massachusetts under FED. R. CIV. P. 23 to recover unpaid wages and other applicable penalties.

2.      Plaintiff and the Putative Collective/Class Members are those similarly situated persons who worked for Ericsson at any time during the relevant time periods through the final disposition of this matter, and have not been paid for all hours worked nor the correct amount of wages, including overtime, in violation of state and federal law.

3.      Although Plaintiff and the Putative Collective/Class Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Collective/Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4.      Likewise, Plaintiff and the Putative Collective/Class Members worked under forty (40) hours per workweek on occasion and were not fully compensated at their regular rate of pay for all hours worked.

5.      During the relevant time period(s), Ericsson knowingly and deliberately failed to compensate Plaintiff and the Putative Collective/Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis.

6.      Specifically, Ericsson's regular practice—including during weeks when Plaintiff and the Putative Collective/Class Members worked in excess of forty (40) hours (not counting hours worked "off-the-clock")—was (and is) to deduct a 30-minute meal-period each eight (8) hour shift from the Plaintiff's and the Putative Collective/Class Members' wages for a meal break they did not receive.

7. In addition to the unpaid meal breaks, Ericsson also does not compensate the Plaintiff and the Putative Collective/Class Members for all of their time spent performing mandatory online training.

8. The effects of Ericsson's practices were (and are) that all compensable time worked by Plaintiff and the Putative Collective/Class Members was not (and is not) counted and paid; thus, Ericsson has failed to properly compensate Plaintiff and the Putative Collective/Class Members for all hours worked and has failed to properly compensate them the proper amount of overtime under the FLSA and applicable state law.

9. Ericsson knowingly and deliberately failed to compensate Plaintiff and the Putative Collective/Class Members for all hours worked and the proper amount of overtime on a routine and regular basis during the relevant time period(s).

10. Plaintiff and the Putative Collective/Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or applicable state law.

11. Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid wages and other damages owed under the state laws of Massachusetts, including automatic treble damage and interest, as a class action pursuant to FED. R. CIV. P. 23.

12. Plaintiffs also pray that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt in to the FLSA claims in this lawsuit.

13. Plaintiffs also prays that the Rule 23 class be certified as defined herein, with the Plaintiff designated herein named as the Class Representative.

## II.
## THE PARTIES

14. Plaintiff—Ashley Hammett ("Hammett")—was employed by Ericsson in Massachusetts during the relevant time period(s). Plaintiff Hammett did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek due to Defendant's policies complained of in this Complaint regarding meal breaks and training.[1]

15. The FLSA Collective Members are those current and former hourly Tower Technicians[2] who were employed by Ericsson at any time from April 5, 2021, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff worked and was paid.

16. The Massachusetts Class Members are those current and former current and former hourly Tower Technicians who were employed by Ericsson in the Commonwealth of Massachusetts at any time from April 5, 2021, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Hammett worked and was paid.

17. Defendant Ericsson, Inc. is a foreign for-profit corporation that is licensed to do business in the Commonwealth of Massachusetts and that may be served through its registered agent for service of process in Massachusetts: **Capitol Corporate Services, Inc., 18 Tremont Street, Suite 146, Boston, Massachusetts 02108**.

---

[1] The written consent of Ashley Hammett, pursuant to 29 U.S.C. § 216(b), is attached hereto as Exhibit "A."

[2] Tower Technicians are employees who build, upgrade, disassemble, and/or repair telecommunication towers, which employees have job titles including but not limited to Tower Technician I, Tower Technician II, Tower Technician III, Top Hand, Tower Lead, and Foreman.

## III.
## JURISDICTION & VENUE

18. This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under the FLSA, 29 U.S.C. §§ 201–19.

19. This Court has supplemental jurisdiction over the additional state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiffs' FLSA claims that they form part of the same case or controversy.

20. Plaintiffs have not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

21. This Court has specific personal jurisdiction over Ericsson because it has purposefully availed itself of the privilege of conducting activities within the Commonwealth of Massachusetts, Plaintiffs' claims arise out of or relate to those contacts, exercising jurisdiction over Defendant comports with traditional notions of fair play and substantial justice, and—therefore—the relationship among Defendant, Massachusetts, and Plaintiffs' claims is close enough to support jurisdiction.

22. Venue is proper pursuant to 28 U.S.C. § 1391 in the District of Massachusetts because this is a judicial district where a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred.

23. Additionally, Plaintiff Hammett worked for Ericsson in and around Northborough, Massachusetts, which is located in this District and Division.

## IV.
## BACKGROUND FACTS

24. Defendant Ericsson provides telecommunications services throughout the world.[3]

---

[3] https://www.ericsson.com/en/about-us

25. To provide its services, Ericsson employed (and continues to employ) numerous hourly Tower Technicians—including Plaintiff and the individuals that make up the putative collective and class.

26. Plaintiff and the Putative Collective/Class Members were employed by Ericsson as non-exempt, Tower Technicians who were not paid for all hours worked, including hours worked in excess of forty (40) hours each workweek.

27. Plaintiff and the Putative Collective/Class Members' job duties include building telecommunications towers, repairing telecommunications towers, disassembling telecommunications towers, and upgrading the hardware on telecommunications towers.

28. While exact job titles may differ, these hourly employees were subjected to the same or similar illegal pay practices for similar work.

29. Importantly, none of the FLSA exemptions relieving a covered employer (such as Ericsson) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiff or the Putative Collective/Class Members.

30. Plaintiff Hammett was employed by Ericsson as a Tower Technician III in the Northeast United States from approximately 2020 until October of 2023.

31. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure, and the policies (and practices) of Ericsson resulting in the complained of FLSA and state law violations.

32. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties.

33. Plaintiff and the Putative Collective/Class Members are non-exempt employees who were (and are) paid by the hour.

34. Plaintiff and the Putative Collective/Class Members were typically scheduled to work more than forty (40) hours each week.

35. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to the policies (and practices) of Ericsson resulting in the complained of FLSA and state law violations.

**Unpaid Meal Breaks**

36. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their pay structure in that they are all paid on an hourly basis and had a meal break automatically deducted from their daily time.

37. Plaintiff and the Putative Collective/Class Members were typically scheduled to work, and did work, 12-hour shifts each day for five (5) to six (6) days per week, which equates to sixty (60) to seventy-two (72) hours per week—these are referred to as "on-the-clock" hours.

38. In addition to their "on-the-clock" hours, Plaintiff and the Putative Collective/Class Members regularly worked between two-and one-half to three hours "off-the-clock" per week and have not been compensated for that time.

39. Ericsson has a policy to automatically deduct one 30-minute meal period from Plaintiff and the Putative Collective/Class Members' daily time whether or not they perform compensable work during such "breaks."

40. Despite automatically deducting thirty (30) minutes of time from Plaintiff and the Putative Collective/Class Members' daily time, Ericsson did not completely relieve Plaintiff and the Putative Collective/Class Members from duty during their shift for the purposes of taking their meal break(s).

41. Indeed, Ericsson did not even inform the Plaintiff or Putative Collective/Class Members that it was automatically deducting thirty (30) minutes from their compensable time (and resulting wages) for each shift for a meal break.

42. Plaintiff and the Putative Collective/Class Members typically spent the majority of their workday suspended 200 feet off the ground working on telecommunications towers where taking a meal break was logistically unfeasible.

43. Ericsson was (and continues to be) aware that Plaintiff and the Putative Collective/Class Members regularly worked (and continue to work) through their meal periods without pay in violation of the FLSA and relevant state law.

44. Ericsson never formally told Plaintiff and the Putative Collective/Class Members that it was deducting thirty (30) minutes from their wages each shift, never told them they needed to take meal breaks, and never told them to notify anyone if they did not take a meal break.

45. Instead, Ericsson benefitted from the Plaintiff and the Putative Collective/Class Members' free labor, as Plaintiff and the Putative Collective/Class Members typically worked throughout their entire shift without taking a break.

46. Ericsson knew Plaintiff and the Putative Collective/Class Members did not take a meal break because they did not indicate that they took one in the time sheet they provided to Ericsson each day.

47. The Plaintiff and some Putative Collective/Class Members did learn of the automatic meal break deduction and complained to their Ericsson supervisors that they never take meal breaks.

48. Despite knowledge that Plaintiff and the Putative Collective/Class Members typically did not take meal breaks, Ericsson supervisors—instead of reversing the deduction applied to their time and wages—continued the deduction and ignored the Plaintiff and the Putative Collective/Class Members' complaints.

49. Ericsson's automatic thirty (30) minute meal period deduction resulted (and continues to result) in Plaintiff and the Putative Collective/Class Members' working straight time hours and

overtime hours for which they were (and are) not compensated at the rates required by the FLSA and applicable state law.

50. Specifically, when Plaintiff and Putative Collective/Class Members worked three (3) or fewer twelve-hour shifts in a week and did not receive a meal break during any shift, Ericsson's meal break policy resulted in Plaintiff and the Putative Collective/Class Members not being paid for roughly one and one-half hours or fewer of compensable straight time work.

51. When Plaintiff and the Putative Collective/Class Members worked four (4) or more twelve-hour shifts in a week and did not receive a meal break during any shift, Ericsson's meal break policy resulted in Plaintiff and the Putative Collective/Class Members not being paid for roughly two hours or more of compensable overtime work.

## Unpaid Training

52. Ericsson also requires its Tower Technicians—including Plaintiff and the Putative Collective/Class Members—to complete dozens of hours of online training each year.

53. Instead of paying Plaintiff and the Putative Collective/Class Members for every hour they spend completing their mandatory training, Ericsson only pays a pre-determined number of hours for each course.

54. As an example, all Tower Technicians must complete the "OSHA 30" online training course each year. Ericsson set the number of payable hours for completing this course as no more than thirty (30) hours for completing the OSHA 30.

55. Should a Plaintiff or Putative Collective/Class Member take more than thirty (30) hours to complete the OSHA 30 course, Ericsson will only pay them for thirty (30) hours.

56. Regardless how many hours it actually takes a Plaintiff or Putative Collective/Class Member to complete their mandatory online training course, Ericsson will not pay them for all hours

reported by them to Ericsson for the training if the hours exceed the number of hours Ericsson has allotted for the course.

57. Plaintiff and the Putative Collective/Class Members were regularly required to complete their mandatory online training off the clock because Ericsson refused to pay them for all the online training hours they reported having worked.

58. As a result of Ericsson's policy to not pay for all mandatory training, Plaintiff and the Putative Collective/Class Members were not paid for approximately 2-3 hours of compensable time per month.

59. As a result of Ericsson's failure to compensate Plaintiff and the Putative Collective/Class Members for compensable work performed "off the clock," such as during their unpaid meal breaks and during part of their online training, Plaintiff and the Putative Collective/Class Members worked straight time hours and overtime hours for which they were not compensated at the rates required by the FLSA and applicable state law.

60. Ericsson knew or should have known that it was not (and is not) compensating Plaintiff and the Putative Collective/Class Members for the proper amount of overtime compensation in violation of the FLSA.

61. Ericsson knew or should have known that its failure to pay the correct amount of straight time and overtime to Plaintiff and Putative Collective/Class Members would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Collective/Class Members.

62. Ericsson knew or should have known that requiring the Plaintiff and the Putative Collective/Class Members to work off-the-clock during their thirty (30) minute meal break would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Collective/Class Members.

63. Ericsson also knew or should have known that failing to pay Plaintiff and the Putative Collective/Class Members for all of their online training time would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Collective/Class Members.

64. Because Ericsson did not pay Plaintiff and the Putative Collective/Class Members time and a half for all hours worked in excess of forty (40) in a workweek, Ericsson's pay policies and practices willfully violated (and continue to violate) the FLSA and applicable state laws.

65. Because Ericsson did not pay Plaintiff and the Putative Collective/Class Members for all straight time worked, Ericsson pay policies and practices violated (and continue to violate) applicable state laws.

66. Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and all unpaid straight time pursuant to applicable state law.

## V.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Collective Action Alleging FLSA Violations)

**A.  FLSA COVERAGE**

67. The preceding paragraphs are incorporated as though fully set forth herein.

68. The FLSA Collective is defined as follows:

**ALL TOWER TECHNICIANS WHO WERE EMPLOYED BY ERICSSON, INC., ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM APRIL 5, 2021, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective Members").**

69. At all material times, Ericsson has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

70. At all material times, Ericsson has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

71. At all material times, Ericsson has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of telecommunications infrastructure and commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

72. Specifically, Ericsson employs numerous tower technicians to provide services in the telecommunications industry across the United States, purchases materials through commerce, transports materials through commerce and on the interstate highways, and conducts transacts through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

73. During the respective periods of Plaintiff and the FLSA Collective Members' employment by Ericsson, these individuals provided services for Ericsson that involved interstate commerce for purposes of the FLSA.

74. In performing work for Ericsson, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

75. Specifically, Plaintiff and the FLSA Collective Members are (or were) hourly employees who assisted Ericsson's customers and employees throughout the United States. 29 U.S.C. § 203(j).

76. At all material times, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

77. The proposed classes of similarly situated employees—that is, the FLSA collective sought to be certified pursuant to 29 U.S.C. § 216(b), are defined in Paragraph 68.

78. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Ericsson.

**B.   FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA**

79. Ericsson violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce, the operation of telecommunications infrastructure, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

80. Moreover, Ericsson knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

81. Ericsson knew or should have known its pay practices were in violation of the FLSA.

82. Ericsson is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

83. Plaintiff and the FLSA Collective Members, on the other hand, are less sophisticated employees who trusted Ericsson to pay them according to the law.

84. The decision and practice by Ericsson to not pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was neither reasonable nor in good faith.

85. Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

C.  **COLLECTIVE ACTION ALLEGATIONS**

86. All previous paragraphs are incorporated as though fully set forth herein.

87. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action collectively on behalf of Ericsson's employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

88. Other similarly situated employees of Ericsson have been victimized by Ericsson's patterns, practices, and policies, which are in willful violation of the FLSA.

89. The FLSA Collective is defined in Paragraph 68.

90. Ericsson's failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Ericsson, and does not depend on the personal circumstances of Plaintiff Hammett or the FLSA Collective Members.

91. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

92. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

93. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

94. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

95. Absent a collective action, many members of the proposed FLSA collective will not likely obtain redress of their injuries and Ericsson will retain the proceeds of their violations.

96. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

97. Accordingly, notice of the action should be promptly sent to the FLSA collective of similarly situated plaintiffs as in Paragraph 68.

## SECOND CAUSE OF ACTION
**(Class Action Alleging Violations of the Massachusetts Acts)**

A.  **MASSACHUSETTS ACTS COVERAGE**

98. All previous paragraphs are incorporated as though fully set forth herein.

99. The Massachusetts Class is defined as:

**ALL TOWER TECHNICIANS WHO WERE EMPLOYED BY ERICSSON, INC., IN THE STATE OF MASSACHUSETTS, AT ANY TIME FROM APRIL 5, 2021, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("Massachusetts Class Members").**

100. At all material times, Ericsson has been an "employer" as defined by the Massachusetts Acts. *See* MASS. GEN. LAWS, Ch. 149, § 148; 151, § 2.

101. At all material times, Plaintiff Hammett and the Massachusetts Class Members were Ericsson's "employees" as defined within the Massachusetts Acts. *See Mass. Gen. Laws*, Ch. 149, § 148; 151, § 2.

102. Ericsson—the "employer"—is not exempt from paying wages and overtime benefits under the Massachusetts Acts.

103. Plaintiff Hammett filed her wage claim with the Attorney General's office prior to this filing.

**B.  FAILURE TO PAY WAGES IN ACCORDANCE WITH THE MASSACHUSETTS ACTS**

104. All previous paragraphs are incorporated as though fully set forth herein.

105. Section 148 of the MWA requires employers, like Ericsson, to pay employees, including Plaintiff Hammett and the Massachusetts Class Members, all wages earned, due, and owing to them on their regular payday. *See* MASS. GEN. LAWS, Ch. 149, §§ 148, 150.

106. During the course of their employment, Ericsson agreed to pay Plaintiff Hammett and each Massachusetts Class Member an hourly rate for all hours they worked in a workweek.

107. Plaintiff Hammett and each Massachusetts Class Member accepted Ericsson's offer.

108. However, during the course of their employment, Ericsson failed to pay Plaintiff Hammett and the Massachusetts Class Members for all the straight time hours they worked at the rates Ericsson agreed to pay them because Ericsson failed to pay them for compensable work performed during unpaid meal breaks and for all online training.

109. As a result of Ericsson's illegal automatic meal break deduction policy and failure to pay for all online training hours, Plaintiff Hammett and the Massachusetts Class Member have been deprived of all wages earned, due, and owed to them. *See* MASS. GEN. LAWS, Ch. 149, § 148.

110. The Massachusetts Acts also require employers, like Ericsson, to pay employees, including Plaintiff Hammett and the Massachusetts Class Members, overtime wages at a rate not less than 1.5 times their regular rates of pay for all hours worked in excess of forty (40) in a workweek. *See* MASS. GEN. LAWS, Ch. 151, § 1A.

111. Ericsson violated, and continues to violate the Massachusetts Acts by failing to pay Plaintiff Hammett and the Massachusetts Class Members all straight time hours worked at the agreed hourly rate and all overtime wages at rates not less than 1.5 times their regular rates for all hours worked after forty (40) in a workweek, including all off-the-clock hours worked by Plaintiff Hammett and the Massachusetts Class Members during their unpaid meal breaks and for online training. *See* MASS. GEN. LAWS, Ch. 149 § 148; 151, § 1A.

112. As a direct and proximate result of Ericsson's willful conduct, Plaintiff Hammett and the Massachusetts Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, including their unpaid wages, automatic treble damages, interest, and reasonable attorneys' fees pursuant to the Massachusetts Acts. *See* MASS. GEN. LAWS, Ch. 149 § 150; 151, § 1B.

113. Ericsson is in possession and control of necessary documents and information from which Plaintiff Hammett would be able to precisely calculate damages.

114. The proposed class of putative class members sought to be certified pursuant to the Massachusetts Acts is defined in Paragraph 99.

115. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Ericsson.

C. **MASSACHUSETTS CLASS ALLEGATIONS**

116. Plaintiff Hammett and the Massachusetts Class Members bring their Massachusetts Acts claim as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by Ericsson to work in Massachusetts since April 5, 2021.

117. Class action treatment of Plaintiff Hammett and the Massachusetts Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

118. The number of Massachusetts Class Members is so numerous that joinder of all class members is impracticable.

119. Plaintiff Hammett's Massachusetts state-law claims share common questions of law and fact with the claims of the Massachusetts Class Members.

120. Plaintiff Hammett is a member of the Massachusetts Class, her claims are typical of the claims of other Massachusetts Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other Massachusetts Class Members.

121. Plaintiff Hammett and her counsel will fairly and adequately represent the Massachusetts Class Members and their interests.

122. Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Accordingly, the Massachusetts Class should be certified as defined in Paragraph 99.

## VI.
## RELIEF SOUGHT

123. Plaintiff respectfully prays for judgment against Ericsson as follows:

   a. For an Order certifying the FLSA Collective as defined in ¶ 68;

   b. For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

   c. For an Order pursuant to § 16(b) of the FLSA finding Ericsson liable for unpaid wages, including unpaid overtime wages, due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

      d.      For an Order certifying the Massachusetts Class as defined in ¶ 99, and designating Plaintiff Hammett as Representative of the Massachusetts Class;

      e.      For an Order pursuant to the Massachusetts state law awarding Plaintiff Hammett and the Massachusetts Class Members damages for unpaid wages, automatic treble damages. and all other damages allowed by law;

      f.      For an Order awarding the costs of this action;

      g.      For an Order awarding attorneys' fees;

      h.      For an Order awarding pre-judgment and post-judgment interest at the maximum legal rate;

      i.      For an Order awarding Plaintiff Hammett a service award as permitted by law;

      j.      For an Order compelling the accounting of the books and records of Ericsson, at Ericsson's expense (should discovery prove inadequate); and

      k.      For an Order granting such other and further relief as may be necessary and appropriate.

| | |
|---|---|
| Date: April 5, 2024. | Respectfully submitted,<br>ASHLEY HAMMET, individually and for all others similarly situated,<br><br>By their counsel,<br><br> /s/ Brant Casavant<br>Hillary Schwab, BBO #666029<br>Brant Casavant, BBO #672614<br>FAIR WORK P.C.<br>192 South Street, Suite 450<br>Boston, MA 02111<br>(t) 617-607-3261<br>(f) 617-488-2261<br>hillary@fairworklaw.com<br>brant@fairworklaw.com<br><br>**Clif Alexander** (*Pro Hac Vice Anticipated*)<br>Texas Bar No. 24064805<br>clif@a2xlaw.com<br>**Austin Anderson** (*Pro Hac Vice Anticipated*)<br>Texas Bar No. 24045189<br>austin@a2xlaw.com<br>**Carter T. Hastings** (*Pro Hac Vice Anticipated*)<br>Texas Bar No. 24101879<br>carter@a2xlaw.com<br>**ANDERSON ALEXANDER, PLLC**<br>101 N. Shoreline, Blvd, Suite 610<br>Corpus Christi, Texas 78401<br>Telephone: (361) 452-1279<br>Facsimile: (361) 452-1284<br><br>***Attorneys in Charge for Plaintiff and Putative Collective/Class Members*** |